UNITED STATES OF AMERICA,

        Plaintiff,

v.

WENDY YANOW,

        Defendant.

**19-CR-101**

Case No. 19-CR-

## PLEA AGREEMENT

1. The United States of America, by its attorneys, Matthew D. Krueger, United States Attorney for the Eastern District of Wisconsin, and Zachary Corey and Matthew Jacobs, Assistant United States Attorneys, and the defendant, Wendy Yanow, individually and by attorney Chris Donovan, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, enter into the following plea agreement:

### CHARGES

2. The defendant has been charged in one count of a one-count information, which alleges a violation of Title 18, United States Code, Section 1343.

3. The defendant has read and fully understands the charges contained in the information. She fully understands the nature and elements of the crime with which she has been charged, and the charge and the terms and conditions of the plea agreement have been fully explained to her by her attorney.

4. The defendant voluntarily agrees to waive prosecution by indictment in open court.

5. The defendant voluntarily agrees to plead guilty to the following count set forth in full as follows:

**THE UNITED STATES ATTORNEY CHARGES:**

1. At all times relevant to this Information, the defendant, Wendy Yanow ("Yanow"), resided in the Thiensville, Wisconsin and was the treasurer of an investment club named Women of Wealth, which typically met every month at different locations in the Eastern District of Wisconsin.

2. Women of Wealth was an investment club founded in 1995 by five original members. Over the years, the size of the group increased and, by 2018, there were 12 members including Yanow.

3. Beginning in approximately 2002 and continuing until approximately December 2018, in the state and Eastern District of Wisconsin and elsewhere,

**WENDY YANOW,**

with the intent to defraud, knowingly devised and executed a scheme to defraud members of the Women of Wealth investment club and to obtain money from them by means of materially false and fraudulent pretenses and representations (the "scheme").

4. For purposes of executing her scheme, Yanow used and caused the use of interstate wire communications.

*The Scheme to Defraud*

5. Each member of Women of Wealth contributed approximately $50 to the group each month and the group would collectively decide how to invest the money. At each meeting, members of the group provided Yanow with personal checks in the amount $50 believing that Yanow took the money, deposited it in a bank account, and purchased the stocks the group had selected.

2

6. For the first seven years of the club's existence, Yanow deposited the checks into a bank account in Women of Wealth's name, for which she was the signatory, and transferred the money to a ScottTrade account to buy the agreed-upon stocks.

7. In 2002, Yanow stole the money in the ScottTrade account. She also began diverting the monthly checks she received from club members for her own personal use. Yanow continued depositing the checks into the Women of Wealth bank account each month, but instead of purchasing the agreed-upon stocks, she took the money out of the account for personal use.

8. From 2002 until the end of her scheme, Yanow represented to the group that she purchased the stocks as instructed when she did not. From 2002 to 2008 she used an AOL and then Yahoo! stock-tracking tool to conceal her scheme to defraud. Using this tool, she was able to track the purported investments and their growth, and then could summarize that information to the group.

9. Beginning in 2008 and continuing through the end of her scheme, Yanow used bivio, which is accounting software for investment groups, to help conceal her scheme to defraud. Relying on information entered by Yanow, bivio tracked the stocks that Yanow falsely claimed she purchased for the group, the performance of those stocks, and each member's contributions.

10. From at least 2002 until the end of the scheme, Yanow sent members a monthly report (relying on AOL, Yahoo! or bivio) purporting to track each member's investment. In reality, however, Yanow did not invest the members' contributions and merely entered into the stock-tracking tools (AOL, Yahoo! or bivio) stock purchases that Yanow never made. By the end of the scheme, Yanow (through bivio) reported to the members of Women of Wealth that they had accumulated $426,623.46 in stocks, when in reality there was nothing.

*Execution of the Scheme*

3

11. Beginning in 2014 and continuing through the end of her scheme, Yanow deposited the monthly checks she received from the group members into Women of Wealth's BMO Harris Bank account before stealing the money.

12. Any time an individual makes a deposit into a BMO Harris account, the bank sends an interstate wire communication to the its offices in Napeville, Illinois, to process the deposit.

13. Through her scheme, Yanow stole $81,382.48 of contributions from the Women of Wealth investment club.

14. On or about November 21, 2016, in the State and Eastern District of Wisconsin and elsewhere,

**WENDY YANOW,**

for the purpose of executing her scheme, knowingly and with intent to defraud, used and caused the use of interstate wire communications from the Eastern District of Wisconsin to Naperville, Illinois, by depositing $700 in Women of Wealth's account at BMO Harris, which funds Yanow later diverted to her personal use.

All in violation of Title 18, United States Code, Section 1343

6. The defendant acknowledges, understands, and agrees that she is, in fact, guilty of the offense described in paragraph 5. The parties acknowledge and understand that if this case were to proceed to trial, the government would be able to prove the following facts beyond a reasonable doubt. The defendant admits that these facts are true and correct and establish her guilt beyond a reasonable doubt:

*Wendy Yanow was the treasurer for an investment club named Women of Wealth ("WOW"). WOW was founded by five original members starting in 1995. Members of the club live in the northern suburbs of Milwaukee. Over the years, the size of the group increased and by the end of the scheme there were 12 members including Yanow.*

*Each member of WOW contributed approximately $50 to the group each month and the group would collectively decide how to invest the money. At each meeting, the members of the group*

4

*provided personal checks for $50 to Yanow with the belief that she took the money, deposited it in a bank account, and then purchased the stocks that the group decided. For the first seven years the club existed, Yanow deposited the checks into a bank account in WOW's name for which she was the signatory. Then, she transferred the money to a ScottTrade account to buy the stocks as agreed upon.*

*In 2002, Yanow stole the money in the ScottTrade account. She also began diverting the monthly checks she received from club members for her own personal use. Yanow continued depositing the checks into the Women of Wealth bank account each month, but instead of purchasing the agreed-upon stocks, she took the money out of the account for personal use.*

*From 2002 until the end of her scheme, Yanow represented to the group that she purchased the stocks as instructed when she did not. From 2002 to 2008 she used an AOL and then Yahoo! stock-tracking tool to conceal her scheme to defraud. Using this tool, she was able to track the purported investments and their growth, and then could summarize that information to the group.*

*Beginning in 2008 and continuing through the end of her scheme, Yanow used bivio, which is accounting software for investment groups, to help conceal her scheme to defraud. Relying on information entered by Yanow, bivio tracked the stocks that Yanow falsely claimed she purchased for the group, the performance of those stocks, and each member's contributions.*

*From at least 2002 until the end of the scheme, Yanow sent members a monthly report (relying on AOL, Yahoo! or bivio) purporting to track each member's investment. In reality, however, Yanow did not invest the members' contributions and merely entered into the stock-tracking tools (AOL, Yahoo! or bivio) stock purchases that Yanow never made. By the end of the scheme, Yanow (through bivio) reported to the members of Women of Wealth that they had accumulated $426,623.46 in stocks, when in reality there was nothing.*

*Through her scheme, Yanow stole $81,382.48 of contributions from the Women of Wealth investment club.*

This information is provided for the purpose of setting forth a factual basis for the plea of guilty. It is not a full recitation of the defendant's knowledge of, or participation in, this offense.

## PENALTIES

7. The parties understand and agree that the offense to which the defendant will enter a plea of guilty carries a maximum possible penalty of up to twenty (20) years in prison, a fine of up to $250,000 or twice the gain from or loss caused by the defendant's offense, whichever is greater. The offense also carries a mandatory special assessment of $100 and a maximum of three (3) years of supervised release. The parties further recognize that a restitution order may be entered

5

by the court. The parties' acknowledgments, understandings, and agreements with regard to restitution are set forth in paragraph 28 of this agreement.

8. The defendant acknowledges, understands, and agrees that she has discussed the relevant statutes as well as the applicable sentencing guidelines with her attorney.

## ELEMENTS

9. The parties understand and agree that in order to sustain the charge of wire fraud, in violation of 18 U.S.C. § 1343, as set forth in the information, the government must prove each of the following propositions beyond a reasonable doubt:

> First, that the defendant knowingly devised or participated in a scheme to defraud as charged; and
>
> Second, that the defendant did so with the intent to defraud; and
>
> Third, that the scheme to defraud involved a materially false or fraudulent pretense, or representation, or promise; and
>
> Fourth, that for the purpose of carrying out the scheme or attempting to do so the defendant caused interstate wire communications to take place in the manner charged in the particular count.

## SENTENCING PROVISIONS

10. The parties agree to waive the time limits in Fed. R. Crim. P. 32 relating to the presentence report, including that the presentence report be disclosed not less than 35 days before the sentencing hearing, in favor of a schedule for disclosure, and the filing of any objections, to be established by the court at the change of plea hearing.

11. The parties acknowledge, understand, and agree that any sentence imposed by the court will be pursuant to the Sentencing Reform Act, and that the court will give due regard to the Sentencing Guidelines when sentencing the defendant.

12. The defendant acknowledges and agrees that her attorney has discussed the potentially applicable sentencing guidelines provisions with her to the defendant's satisfaction.

6

13. The parties acknowledge and understand that prior to sentencing the United States Probation Office will conduct its own investigation of the defendant's criminal history. The parties further acknowledge and understand that, at the time the defendant enters a guilty plea, the parties may not have full and complete information regarding the defendant's criminal history. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentencing court's determination of the defendant's criminal history.

## Sentencing Guidelines Calculations

14. The defendant acknowledges and understands that the sentencing guidelines recommendations contained in this agreement do not create any right to be sentenced within any particular sentence range, and that the court may impose a reasonable sentence above or below the guideline range. The parties further understand and agree that if the defendant has provided false, incomplete, or inaccurate information that affects the calculations, the government is not bound to make the recommendations contained in this agreement.

## Relevant Conduct

15. The parties acknowledge, understand, and agree that pursuant to Sentencing Guidelines Manual § 1B1.3, the sentencing judge may consider relevant conduct in calculating the sentencing guidelines range, even if the relevant conduct is not the subject of the offense to which the defendant is pleading guilty.

## Base Offense Level

16. The parties agree to recommend to the sentencing court that the applicable base offense level for the offense charged in the information is 7 under Sentencing Guidelines Manual § 2B1.1(a)(1).

## Specific Offense Characteristics

17. The parties understand and agree that the government will recommend that the defendant's base offense level should be increased 12 levels under Sentencing Guidelines Manual § 2B1.1(b)(1)(G) because the government believes the intended loss associated with the defendant's criminal conduct was greater than $250,000 but less than $550,000. The parties understand and agree that the defendant will recommend that the defendant's base offense level should be increased 6 levels under Sentencing Guidelines Manual § 2B1.1(b)(1)(D) because the defendant believes the intended loss associated with the defendant's criminal conduct was greater than $40,000 but less than $95,000.

18. The parties agree to recommend to the sentencing court that the defendant's offense level should be increased 2 levels under Sentencing Guidelines Manual § 3B1.3 because the defendant abused a position of private trust, as treasurer of the Women of Wealth investment club, in a manner that significantly facilitated the commission and concealment of the defendant's offense. The parties agree to recommend to the sentencing court that the defendant's offense level should be increased 2 levels under Sentencing Guidelines Manual §2B1.1(b)(2)(A)(i) because the offense involved 10 or more victims. The parties understand and agree that the government will recommend to the sentencing court that the offense level should be increased 2 levels under Sentencing Guidelines Manual §2B1.1(b)(10)(C) because of the Government believes that the offense involved sophisticated means.

### Acceptance of Responsibility

19. The government agrees to recommend a two-level decrease for acceptance of responsibility as authorized by Sentencing Guidelines Manual § 3E1.1(a), but only if the defendant exhibits conduct consistent with the acceptance of responsibility. In addition, if the court determines at the time of sentencing that the defendant is entitled to the two-level reduction under § 3E1.1(a), the government agrees to make a motion recommending an additional one-

8

Case 2:19-cr-00101-LA   Filed 06/04/19   Page 8 of 16   Document 2

level decrease as authorized by Sentencing Guidelines Manual § 3E1.1(b) because the defendant timely notified authorities of her intention to enter a plea of guilty.

### Sentencing Recommendations

20. Both parties reserve the right to provide the district court and the probation office with any and all information which might be pertinent to the sentencing process, including but not limited to any and all conduct related to the offense as well as any and all matters which might constitute aggravating or mitigating sentencing factors.

21. Both parties reserve the right to make any recommendation regarding any other matters not specifically addressed by this agreement.

22. The government agrees to recommend a sentence of no more than 24 months. The defendant is free to recommend whatever sentence she thinks appropriate.

### Court's Determinations at Sentencing

23. The parties acknowledge, understand, and agree that neither the sentencing court nor the United States Probation Office is a party to or bound by this agreement. The United States Probation Office will make its own recommendations to the sentencing court. The sentencing court will make its own determinations regarding any and all issues relating to the imposition of sentence and may impose any sentence authorized by law up to the maximum penalties set forth in paragraph 7 above. The parties further understand that the sentencing court will be guided by the sentencing guidelines but will not be bound by the sentencing guidelines and may impose a reasonable sentence above or below the calculated guideline range.

24. The parties acknowledge, understand, and agree that the defendant may not move to withdraw the guilty plea solely as a result of the sentence imposed by the court.

### FINANCIAL MATTERS

9

25. The defendant acknowledges and understands that any and all financial obligations imposed by the sentencing court are due and payable in full upon entry of the judgment of conviction. The defendant further understands that any payment schedule imposed by the sentencing court shall be the minimum the defendant is expected to pay and that the government's collection of any and all court imposed financial obligations is not limited to the payment schedule. The defendant agrees not to request any delay or stay in payment of any and all financial obligations. If the defendant is incarcerated, the defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the court specifically directs participation or imposes a schedule of payments.

26. The defendant agrees to provide to the Financial Litigation Unit (FLU) of the United States Attorney's Office, at least 30 days before sentencing, and also upon request of the FLU during any period of probation or supervised release imposed by the court, a complete and sworn financial statement on a form provided by FLU and any documentation required by the form. The defendant further agrees, upon request of FLU whether made before or after sentencing, to promptly: cooperate in the identification of assets in which the defendant has an interest, cooperate in the liquidation of any such assets, and participate in an asset deposition.

### Special Assessment

27. The defendant agrees to pay the special assessment in the amount of $100 prior to or at the time of sentencing.

### Restitution

28. The defendant acknowledges and understands that she will be required to make full restitution to the victims of the fraud in which the defendant participated, which Ms. Yanow asserts is limited to $81,382.48. The parties understand and agree that the Government will argue that restitution should be $374,494.92. Regardless of the final restitution amount, Yanow

10

agrees to pay restitution of $81,382.48 before sentencing. The defendant understands that because restitution for the offense is mandatory, the amount of restitution shall be imposed by the court regardless of the defendant's financial resources. The defendant agrees to cooperate in efforts to collect the restitution obligation. The defendant understands that imposition or payment of restitution will not restrict or preclude the filing of any civil suit or administrative action.

## **DEFENDANT'S WAIVER OF RIGHTS**

29. In entering this agreement, the defendant acknowledges and understands that she surrenders any claims she may have raised in any pretrial motion, as well as certain rights which include the following:

   a. If the defendant persisted in a plea of not guilty to the charges against her, she would be entitled to a speedy and public trial by a court or jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government and the judge all must agree that the trial be conducted by the judge without a jury.

   b. If the trial is a jury trial, the jury would be composed of twelve citizens selected at random. The defendant and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of guilty. The court would instruct the jury that the defendant is presumed innocent until such time, if ever, as the government establishes guilt by competent evidence to the satisfaction of the jury beyond a reasonable doubt.

   c. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all of the evidence, whether or not he was persuaded of defendant's guilt beyond a reasonable doubt.

   d. At such trial, whether by a judge or a jury, the government would be required to present witnesses and other evidence against the defendant. The defendant would be able to confront witnesses upon whose testimony the government is relying to obtain a conviction and she would have the right to cross-examine those witnesses. In turn the defendant could, but is not obligated to, present witnesses and other evidence on her own behalf. The defendant would be entitled to compulsory process to call witnesses.

  e. At such trial, defendant would have a privilege against self-incrimination so that she could decline to testify and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify on her own behalf.

30.  The defendant acknowledges and understands that by pleading guilty she is waiving all the rights set forth above. The defendant further acknowledges the fact that her attorney has explained these rights to her and the consequences of her waiver of these rights. The defendant further acknowledges that as a part of the guilty plea hearing, the court may question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant intends to plead guilty. The defendant further understands that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement.

31.  The defendant acknowledges and understands that she will be adjudicated guilty of the offense to which she will plead guilty and thereby may be deprived of certain rights, including but not limited to the right to vote, to hold public office, to serve on a jury, to possess firearms, and to be employed by a federally insured financial institution.

32.  The defendant knowingly and voluntarily waives all claims she may have based upon the statute of limitations, the Speedy Trial Act, and the speedy trial provisions of the Sixth Amendment. The defendant agrees that any delay between the filing of this agreement and the entry of the defendant's guilty plea pursuant to this agreement constitutes excludable time under the Speedy Trial Act.

33.  Based on the government's concessions in this agreement, the defendant knowingly and voluntarily waives her right to appeal her sentence in this case and further waives her right to challenge her conviction or sentence in any post-conviction proceeding, including but not limited to a motion pursuant to 28 U.S.C. § 2255. As used in this paragraph, the term

"sentence" means any term of imprisonment, term of supervised release, term of probation, supervised release condition, fine, and forfeiture order. The defendant's waiver of appeal and post-conviction challenges includes the waiver of any claim that (1) the statute or Sentencing Guidelines under which the defendant is convicted or sentenced are unconstitutional, and (2) the conduct to which the defendant has admitted does not fall within the scope of the statute or Sentencing Guidelines. This waiver does not extend to an appeal or post-conviction motion based on (1) the Court's order on restitution, (2) a sentence above the guideline range as determined by the court, (3) any punishment in excess of the statutory maximum, (4) the sentencing court's reliance on any constitutionally impermissible factor, such as race, religion, or sex, (5) ineffective assistance of counsel in connection with the negotiation of the plea agreement or sentencing, or (6) a claim that the plea agreement was entered involuntarily.

## Further Civil or Administrative Action

34. The defendant acknowledges, understands, and agrees that the defendant has discussed with her attorney and understands that nothing contained in this agreement, including any attachment, is meant to limit the rights and authority of the United States of America or any other state or local government to take further civil, administrative, or regulatory action against the defendant, including but not limited to any listing and debarment proceedings to restrict rights and opportunities of the defendant to contract with or receive assistance, loans, and benefits from United States government agencies.

## GENERAL MATTERS

35. The parties acknowledge, understand, and agree that this agreement does not require the government to take, or not to take, any particular position in any post-conviction motion or appeal.

36. The parties acknowledge, understand, and agree that this plea agreement will be filed and become part of the public record in this case.

37. The parties acknowledge, understand, and agree that the United States Attorney's office is free to notify any local, state, or federal agency of the defendant's conviction.

38. The defendant understands that pursuant to the Victim and Witness Protection Act, the Justice for All Act, and regulations promulgated thereto by the Attorney General of the United States, the victim of a crime may make a statement describing the impact of the offense on the victim and further may make a recommendation regarding the sentence to be imposed. The defendant acknowledges and understands that comments and recommendations by a victim may be different from those of the parties to this agreement.

## Further Action by Internal Revenue Service

39. Nothing in this agreement shall be construed so as to limit the Internal Revenue Service in discharging its responsibilities in connection with the collection of any additional tax, interest, and penalties due from the defendant as a result of the defendant's conduct giving rise to the charges alleged in the information.

## EFFECT OF DEFENDANT'S BREACH OF PLEA AGREEMENT

40. The defendant acknowledges and understands if she violates any term of this agreement at any time, engages in any further criminal activity prior to sentencing, or fails to appear for sentencing, this agreement shall become null and void at the discretion of the government. The defendant further acknowledges and understands that the government's agreement to dismiss any charge is conditional upon final resolution of this matter. If this plea agreement is revoked or if the defendant's conviction ultimately is overturned, then the government retains the right to reinstate any and all dismissed charges and to file any and all charges which were not filed because of this agreement. The defendant hereby knowingly and

14

voluntarily waives any defense based on the applicable statute of limitations for any charges filed against the defendant as a result of her breach of this agreement. The defendant understands, however, that the government may elect to proceed with the guilty plea and sentencing. If the defendant and her attorney have signed a proffer letter in connection with this case, then the defendant further acknowledges and understands that she continues to be subject to the terms of the proffer letter.

## **VOLUNTARINESS OF DEFENDANT'S PLEA**

41. The defendant acknowledges, understands, and agrees that she will plead guilty freely and voluntarily because she is in fact guilty. The defendant further acknowledges and agrees that no threats, promises, representations, or other inducements have been made, nor agreements reached, other than those set forth in this agreement, to induce the defendant to plead guilty.

## ACKNOWLEDGMENTS

I am the defendant. I am entering into this plea agreement freely and voluntarily. I am not now on or under the influence of any drug, medication, alcohol, or other intoxicant or depressant, whether or not prescribed by a physician, which would impair my ability to understand the terms and conditions of this agreement. My attorney has reviewed every part of this agreement with me and has advised me of the implications of the sentencing guidelines. I have discussed all aspects of this case with my attorney and I am satisfied that my attorney has provided effective assistance of counsel.

Date: 6/3/19

WENDY YANOW
Defendant

I am the defendant's attorney. I carefully have reviewed every part of this agreement with the defendant. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

Date: 6-3-19

CHRIS DONOVAN
Attorney for Defendant

For the United States of America:

Date: 6/3/19

for MATTHEW D. KRUEGER
United States Attorney

Date: 6/3/2019

for MATTHEW JACOBS
Assistant United States Attorney

16